UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FARHAMUDDIN AHMADI,

Petitioner,

v.

PAMELA BONDI, et al.,

Respondents.

Case No. 2:26-cv-00811-TLF

ORDER GRANTING HABEAS
PETITION IN PART

Petitioner Farhamuddin Ahmadi, a citizen of Afghanistan, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1 at 2-4; Dkt. 5 at 4, 6. On October 17, 2024, an Immigration Judge ("IJ") ordered petitioner removed to Afghanistan, but deferred removal under the Convention Against Torture ("CAT"). Dkt. 1 at 5; Dkt. 1-1 at 2 (Order); Dkt. 5 at 5; Dkt. 6-6 (Order). On December 2, 2025, respondents re-detained petitioner. Dkt. 1 at 3; Dkt. 5 at 6. Petitioner now petitions for a writ of habeas corpus under 28 U.S.C. § 2241. Dkt. 1. He primarily argues he is entitled to release as his removal is no longer reasonably foreseeable under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Dkt. 1.

The parties unanimously consent to the jurisdiction of a Magistrate Judge. Dkt. 4. For the reasons below, the court **GRANTS** the habeas petition **IN PART** and orders respondents to **immediately release** petitioner within **24 hours** of this Order.

ORDER GRANTING HABEAS PETITION IN PART - 1

## I.     BACKGROUND

Petitioner is a citizen of Afghanistan. Dkt. 1 at 2-4; Dkt. 5 at 4, 6. In 2017, he initially entered the United States. Dkt 1 at 5; Dkt. 5 at 5. Petitioner states he "entered on a visa obtained with the assistance of his partner, who had previously relocated to the United States." Dkt. 1 at 6. He also states he relocated to Seattle, Washington in 2018. Dkt. 1 at 6.

On December 18, 2020, petitioner pleaded guilty to rape in the third degree in Washington State Superior Court. Dkt. 6-4 at 3. He was sentenced to twelve months of incarceration. Dkt. 6-4 at 6.

On February 15, 2024, respondents detained petitioner for the following eight months at NWIPC. Dkt. 1 at 5; Dkt. 5 at 5.

On October 17, 2024, an IJ entered a final removal order. Dkt. 1-1 at 2; Dkt. 6-7. While the IJ ordered petitioner to be removed to Afghanistan, the IJ also deferred removal under Article III of the CAT. Dkt. 1-1 at 2; Dkt. 6-6. Petitioner states this deferral is based on the "more than fifty percent likelihood" of the Taliban persecuting him due to his sexual orientation, his Hazara identity, and his former work with Roshan Telecom. Dkt. 1 at 5-6; Dkt. 5 at 5.

On October 18, 2024, respondents released petitioner under an Order of Supervision ("OSUP"). Dkt. 1 at 2; Dkt. 5 at 5; Dkt. 6-7 (OSUP).

On December 2, 2025, respondents re-detained petitioner. Dkt. 1 at 3; Dkt. 5 at 6. The following day, respondents state they issued a "Notice of Revocation of Release." Dkt. 5 at 6; Dkt. 6-8. Respondents acknowledge "[p]etitioner was not provided with an opportunity to appear at an informal interview to respond to the revocation of his

ORDER GRANTING HABEAS PETITION IN PART - 2

OSUP." Dkt. 5 at 6. Respondents also state "[p]etitioner has not appeared before an IJ for a custody re-determination hearing following his December 2, 2025 arrest." Dkt. 5 at 6.

On February 17, 2026, respondents state "[p]etitioner was served with a Form I-229(a) due to his ongoing refusal to assist with the identification of a third country for his removal." Dkt. 5 at 6. Otherwise, ICE "is reviewing whether third country removal is available." Dkt. 5 at 1; Dkt. 7.

## II.    DISCUSSION

### A. *Zadvydas*

"[W]hen [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days" also known as "the 'removal period.'" 8 U.S.C. § 1231(a)(1)(A). The removal period begins, among other options, on the "date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i).

While a "special statute authorizes further detention if the Government fails to remove the alien during those 90 days," allowing the "indefinite detention" of noncitizens "would raise serious constitutional concerns." *Zadvydas* 533 U.S. at 682 (citing 8 U.S.C. § 1231(a)(6)). "[T]o avoid a serious constitutional threat," the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The Supreme Court found six-months was a "presumptively reasonable period of detention". *Id.* at 701.

ORDER GRANTING HABEAS PETITION IN PART - 3

As a preliminary matter, the parties dispute whether the six-month presumptively reasonable period of detention has elapsed. *E.g.* Dkt. 5 at 7; Dkt. 8 at 2-3.

Respondents assert petitioner is still within this period, arguing "ICE re-detained Petitioner on December 2, 2025," meaning his "total length of  . . . post-order detention is roughly three and a half months," as of March 25, 2026. Dkt. 5 at 7. Petitioner responds that "the Zadvydas six-month period runs from the entry of the removal order, not from the date of later detention or redetention" meaning the presumptively reasonable period expired "months before ICE redetained him in December 2025." Dkt. 8 at 2-3. The parties agree petitioner's removal order became final on October 17, 2024, when petitioner waived his appeal. Dkt. 5 at 7; Dkt. 8 at 3.

The Court need not resolve this question, however, as "[a]t no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the *presumptively* reasonable six-month period." *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) (emphasis added); *see also Zheng v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:25-cv-02483-TLF, 2026 WL 850531 at *2-3.

Turning to the merits, *Zadvydas* establishes a two-step process. First, petitioner "bear[s] the initial burden of providing 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Trinh*, 466 F. Supp. 3d at 1082 (quoting *Zadvydas*, 533 U.S. at 701). Second, "[o]nce that initial showing is made, the burden shifts to the Government to respond with evidence sufficient to rebut it." *Id.* (citing *Zadvydas*, 533 U.S. at 701).

8 U.S.C. 1231(b)(2) "provides four consecutive removal commands . . ." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005). In short, "(1) [a noncitizen] shall be

ORDER GRANTING HABEAS PETITION IN PART - 4

removed to the country of his choice . . . (2) otherwise he shall be removed to the country of which he is a citizen . . . (3) otherwise he shall be removed to one of the countries with which he has a lesser connection . . . or (4) if that is 'impracticable, inadvisable, or impossible,' he shall be removed to 'another country whose government will accept the alien into that country.'" *Id.*

Under the above process, petitioner asserts "[r]emoval to his former country of residence, Afghanistan, is not reasonably foreseeable because he has been granted deferral of removal under the CAT." Dkt. 1 at 3, 7. Even so, he states "ICE has not obtained a travel document to return [him] to Afghanistan or any other country." Dkt. 1 at 7.

Respondents retort that "[w]hile the immigration court granted Petitioner's application for deferral of removal under the [CAT]," ICE "is reviewing whether third country removal is available." Dkt. 5 at 1; Dkt. 7 at 3 ("ERO will work with the consulate of the country who accepts Petitioner in obtaining a proper travel document. Petitioner has an expired Afghan passport, which ERO believes will expedite processing for any future travel document . . ."). They further state that "[o]n February 17, 2026, Petitioner was served with a Form I-229(a) due to his ongoing refusal to assist with the identification of a third country for his removal." Dkt. 5 at 6.

This Court has rejected reliance on similar generalized assertions under *Zadvydas*. *See, e.g.*, *Elshourbagy v. Bondi*, --- F. Supp. 3d ----, 2025 WL 3718993, at *4 (W.D. Wash. 2025) (noting "[t]here is no evidence that steps have been taken to obtain a Ugandan travel document for Petitioner, that Uganda has any interest in accepting Petitioner, or even that there has been any communication with Uganda regarding

ORDER GRANTING HABEAS PETITION IN PART - 5

Petitioner at all"); *see also Saadhom v. Bondi*, No. 2:26-cv-00425-TL, 2026 WL 698786, at *5 (W.D. Wash. Mar. 12, 2026) (rejecting assertions that the government "submitted travel document requests to Canada, Panama, and Costa Rica" as "they are silent as to whether they have heard back from those countries" and can offer no timeline or "specific date of anticipated removal.").

Respondents here, beyond stating they are "reviewing whether third country removal is available," do not identify any specific countries as candidates for removal, identify communications with other countries, or provide an estimated timeline for removal. This, despite the process described in *Jama* which provides numerous options to consider even if petitioner refuses to identify a country for removal. 543 U.S. at 341.

On these facts, the Court finds there is no significant likelihood of removal in the reasonably foreseeable future.

When Zadvydas is satisfied, release is warranted even if the petitioner has a criminal record. *Zadvydas*, 533 U.S. at 684; see also, *Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1199 (W.D. Wash. 2025) (observing that the Court's holding in Zadvydas, applied to an "individual with 'a long criminal record' and 'a history of flight.' "); *see also Hamedani v. Bondi*, No. 2:25-cv-02509-JNW, 2026 WL 452424 at *3-4 (W.D. Wash. Feb. 18, 2026) (noting that despite the petitioner's "criminal history . . . [h]e must be released" under *Zadvydas*).

The Court orders respondents to release petitioner within three days of this Order under conditions of release from his most recent OSUP. Dkt. 6-7 (OSUP).

**B. Third Country Removal**

ORDER GRANTING HABEAS PETITION IN PART - 6

Petitioner also asks the Court to order respondents "may not remove or seek to remove Mr. Ahmadi to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings." Dkt. 1 at 16.

The Court agrees with the reasoning of the Court in *Elshourbagy*. "A plaintiff or petitioner 'seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Elshourbagy*, 2025 WL 3718993 at *9 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

For the first requirement, "'[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Id.* (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).

For the second requirement, "[w]ere Petitioner to be 'removed from the United States to the custody of a foreign sovereign' . . . the legal remedies by which Petitioner might redress this harm would be substantially diminished, if not extinguished entirely." *Id.* (quoting *A.A.R.P. v. Trump*, 605 U.S. 91, 93 (2025)). The Court noted respondents' policies (such as the July 9, 2025, ICE Memorandum, which respondents cite in the present case (Dkt. 5 at 8-9)), "fall far short of what court[s] in this District and Circuit have held that due process requires." *Id.* at *8.

ORDER GRANTING HABEAS PETITION IN PART - 7

For the third and fourth requirements, "the balance of equities tips steeply in [petitioner's] favor, because his interest in avoiding the unlawful deprivation of his liberty outweighs the minimal burden on Respondents" and "'it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Id.* at *9 (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)).

Under these circumstances, the Court finds injunctive relief is appropriate regarding third country removal. Respondents shall not remove or seek to remove petitioner to a third country without notice and a meaningful opportunity to respond in conformity with due process.

Petitioner also asks the Court to "[o]rder that Respondents may not remove Mr. Ahmadi to any third country because Respondents' third country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm." Dkt. 1 at 15-16 (arguing also that petitioner's "convictions do not authorize the government to inflict . . . additional punishment on him" though their "punitive" removal program).

Petitioner alleges that "[r]espondents reportedly have negotiated with at least 58 countries to accept deportees" and cites a *New York Times* article in support. Dkt. 1 at 7. Petitioner further alleges respondents have a practice of sending non-citizens to third countries such as El Salvador, South Sudan, and Eswatini. Dkt. 1 at 7-8. Petitioner does not offer particularized evidence about characteristics of the current practice being applied to him, and how those characteristics would be evaluated by the Court to determine whether they are punitive as applied.

ORDER GRANTING HABEAS PETITION IN PART - 8

For other cases in which petitioners have made generalized arguments, this Court has rejected reliance on evidence that is "specific to a particular population and particular destination countries" which "do not extend to these circumstances" in the present matter. *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *7 (W.D. Wash. Dec. 19, 2025); *see also Saadhom*, 2026 WL 698786, at *7-8.

Here, considering the record, the Court does not have a sufficient basis to rule respondent's third country removal program is unconstitutionally punitive. *See Elshourbagy*, 2025 WL 3718993 at *9.

While the Court declines to categorically enjoin removal to "any" potential third country, the petitioner retains the ability to contest removal to a third country where he is likely to face imprisonment or other harm. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019) (citing 8 U.S.C. § 1231(b)(3)) (outlining due process requirements for third country removal that include, but are not limited to, "giv[ing] the noncitizen written notice of the determination that the noncitizen is subject to removal" and affirmatively "ask[ing] the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the noncitizen's response"); *see also Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (holding the "last minute" designation of a third country "violated a basic tenet of constitutional due process: that individuals . . . will have the opportunity to prepare and present relevant arguments and evidence.").

## III.   ORDER

1) Respondents **are ordered to** release petitioner within **24 hours** of this Order under his most recent previous conditions of release.

ORDER GRANTING HABEAS PETITION IN PART - 9

2) Within **two days** (*see* Fed. R. Civ. P. 6(a)(1)) of petitioner's release, respondents **must file** a declaration with this Court confirming the date and time petitioner was released from custody.

3) Respondents **ARE ORDERED TO NOT REMOVE AND NOT SEEK TO REMOVE PETITIONER** to a third country without notice and meaningful opportunity to respond in conformity with due process.

4) Petitioner's request for an order finding respondents' third country removal policy is unconstitutionally punitive is **DENIED** without prejudice.

Dated this 24th day of April, 2026.

Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING HABEAS PETITION IN PART - 10